# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MELISSA REETZ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff. <br><br> v. <br><br> FIRST PORTFOLIO VENTURES I LLC <br><br> and <br><br> FIRST FINANCIAL ASSET MANAGEMENT LLC, <br><br> Defendants. | Case No.: 21-cv-20 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action counterclaim and third-party claim seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Plaintiff resided in this district when a substantial part of the events or omissions giving rise to the claim in this case occurred and Defendants are subject to the Court's personal jurisdiction in this District.

## PARTIES

3. Plaintiff Melissa R. Reetz ("Reetz") is an individual who resides in Dane County, Wisconsin. She previously resided in Greenfield, Milwaukee County, Wisconsin.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff, a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt at issue in this action was incurred as a result of a consumer transaction.

6. Defendant First Portfolio Ventures I, LLC ("FPVI") is a Georgia limited liability company with its principal offices located at 3091 Governors Lake Drive, Suite 500, Peachtree Corners, Georgia 30071.

7. FPVI does substantial business in Wisconsin.

8. FPVI is engaged in the business of a debt buyer, purchasing defaulted consumer debts and collecting those debts.

9. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

10. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d

364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

11. The primary purpose of a company that purchases and takes assignment of defaulted consumer debts and then subsequently collects them is debt collection. *See, e.g., Barbato*, 916 F.3d at 267; *Mitchell*, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.))

12. FPVI's primary business and principal purpose is the collection of consumer debts.

13. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

14. Wis. Stat § 427.103(2) states: "'Debt collection' means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

15. FPVI is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account. Wis. Stat. § 421.301(25) ("The

term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

16. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

17. The Wisconsin Department of Financial Institutions has likewise observed that merchants and creditors are "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

18. FPVI uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

19. FPVI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

20. Defendant First Financial Asset Management, LLC ("FFAM") is a foreign limited liability company with its principal offices located at 3091 Governors Lake Drive, Suite 500, Norcross, Georgia 30071.

21. FFAM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

22. FFAM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

23. FFAM is a debt collector as defined in 15 U.S.C. § 1692a. and Wis. Stat. § 427.103(3).

24. A company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir. 2000)).

## FACTS

25. On or about March 29, 2019, Defendants mailed or caused to be mailed a debt collection letter to Plaintiff. A copy of this letter is attached to this complaint as Exhibit A.

26. Exhibit A seeks to collect a debt allegedly owed to FVPI and allegedly originally owed to "Barclay's Bank Delaware."

27. Upon information and belief, the alleged debt referenced in Exhibit A was a "Mercury Mastercard" account, which Plaintiff opened and used solely for personal, family, and household purposes, including the purchase of household goods and services.

28. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

29. Upon information and belief, Exhibit A is a form debt collection letter, generated by computer, and used by Plaintiff to attempt to collect alleged debts.

30. Upon information and belief, Exhibit A was the first written communication that Defendants sent to Plaintiff with respect to this alleged debt.

31. The reverse side of Exhibit A contains the following:

This collection agency is licensed by the: Office of the Administrator or the Division of Banking, www.wdfi.org.

32. The above language on a collection letter is a representation that the debt collector holds a Wisconsin Collection Agency License, pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code § DFI-Bkg. 74.

33. FFAM is not, in fact, licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions.

34. FPVI is not, in fact, licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions.

35. FFAM is not licensed by the Office of the Administrator of the Division of Banking or any other Wisconsin governmental agency.

36. FPVI is not licensed by the Office of the Administrator of the Division of Banking or any other Wisconsin governmental agency.

37. FFAM was not licensed by the Office of the Administrator of the Division of Banking or any other Wisconsin governmental agency at the time Exhibit A was sent to Plaintiff.

38. FPVI was not licensed by the Office of the Administrator of the Division of Banking or any other Wisconsin governmental agency at the time Exhibit A was sent to Plaintiff.

39. FFAM is not listed on the Division of Banking's website that lists all collection agencies that currently hold a Wisconsin collection agency license. http://www.wdfi.org/fi/lfs/licensee_lists/Default.asp?Browse=CA (visited December 15, 2020).

40. A false statement about a debt collector's licensing status is a material false statement. "It suggests that [the debt collector] has been approved by the state, thereby enhancing in the mind of the unsophisticated consumer [the debt collector's] legitimacy and power to collect the debt." *Radaj v. ARS Nat. Services, Inc.*, No. 05 C 773, 2006 U.S. Dist. LEXIS 68883, at *10; 2006 WL 2620394, at *3-4 (E.D. Wis. Sep. 12, 2006); *see also Derosia v. Credit Corp. Sols.*, No.

17-cv-1671-WED, 2018 U.S. Dist. LEXIS 50016, at *7 (E.D. Wis. Mar. 27, 2018) ("false statements about licensing may suggest that the state has essentially 'vouched for' the debt collector.") (quoting *Radaj*); *Seeger v. Aid Assocs.*, 2007 U.S. Dist. LEXIS 22824 at *13, 2007 WL 1029528 (E.D. Wis. Mar. 29, 2007) ("this court believes that the false statement used by Plaza that it was licensed by the state of Wisconsin, is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA.").

41. An unsophisticated consumer would be misled and confused by Exhibit A.

42. Plaintiff was misled and confused by Exhibit A.

43. At the time Plaintiff received Exhibit A, Plaintiff was in debt with respect to several accounts and was attempting to determine how to prioritize payment of certain accounts, including how to utilize Plaintiff's scarce financial resources.

44. Plaintiff was concerned as a result of the false representation in Exhibit A that Defendants' collection campaign was escalating from the original creditor to a debt buyer and collection agency with a local presence, which entailed enhanced legitimacy and power to collect the debt, including the power to engage in embarrassing and intimidating collection methods like door-to-door collection practices. *See Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) (observing that dunning campaigns frequently escalate from creditor to collection agency to collection law firms); *Harrington v. Fay Servicing, LLC*, No. 18-c-6467, 2019 U.S. Dist. LEXIS 169088, at *15 (N.D. Ill. Sept. 30, 2019) (discussing the intimidating nature of door-to-door collection practices).

45. Plaintiff was at an elevated risk of improperly prioritizing payment of several debts and paying the debt referenced in Exhibit A before other debts because of the false representation in Exhibit A.

## *The FDCPA*

46. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(1) specifically prohibits: "The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

49. 15 U.S.C. § 1692e(9) specifically prohibits: "The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

52. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

53. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

54. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

55. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

56. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats.

§§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(k) states that a debt collector may not: "Use a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not."

## COUNT I – FDCPA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Count I is brought against both Defendants.

63. Exhibit A falsely represents that Defendants are licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions.

64. Defendants violated 15 U.S.C. §§ 1692e, 1692e(1), 1692e(9), and 1692f.

## COUNT II – WCA

65. Reetz incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Count II is brought against both Defendants.

67. <u>Exhibit A</u> falsely represents that Defendants are licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions.

68. Defendants violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

69. Plaintiff brings this action on behalf of a Class consisting of:

> (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by FFAM, (c) stating that FFAM is licensed by the Division of Banking in Wisconsin, (d) seeking to collect a debt incurred for personal, family or household purposes, (e) between March 24, 2019 and March 24, 2020, inclusive, (f) that was not returned by the postal service.

70. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the class.

71. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants' conduct violates the FDCPA or the WCA.

72. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

73. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

# JURY DEMAND

75. Plaintiff hereby demands a trial by jury.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: January 5, 2021

**ADEMI LLP**

By: *Electronically signed by John D. Blythin*
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com